[Cite as *State v. Solomon*, 2017-Ohio-1357.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 104072

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JARON SOLOMON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-597809-A

**BEFORE:** Boyle, P.J., S. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** April 13, 2017

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:   Paul Kuzmins
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Anthony Thomas Miranda
         Ashley B. Kilbane
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

**{¶1}** Defendant-appellant, Jaron Solomon, appeals his conviction. He raises one assignment of error for our review:

> Appellant's change of plea was not knowingly, intelligently and voluntarily made where he pleaded guilty with the erroneous belief that he could appeal the trial court's ruling on a motion to suppress.

**{¶2}** Finding no merit to his appeal, we affirm.

## I. Procedural History and Factual Background

**{¶3}** Solomon was indicted on two counts of aggravated robbery and one count of felonious assault after his DNA was confirmed on a hairbrush that was left at the scene of an aggravated robbery that took place at a gas station on May 7, 2015. Specifically, the hairbrush was found on the ground next to a victim who had been shot during the course of the robbery. The victim told a Cleveland police detective at the scene that he believed the hairbrush belonged to the man who shot him. The detective submitted the hairbrush for DNA testing and later learned that Solomon's DNA was on the hairbrush. The detective then reviewed video recordings taken from surveillance cameras at the gas station and saw that Solomon was indeed "on the scene." The detective subsequently obtained a warrant for Solomon's arrest. Solomon was later arrested when he went to the county jail to visit someone.

**{¶4}** Solomon initially pleaded not guilty to the charges and then moved to suppress a statement that he gave to the Cleveland police detective the day after he was arrested. The trial court held a hearing on Solomon's motion and subsequently denied it.

That same day, Solomon withdrew his former plea of not guilty and pleaded guilty to second-degree felonious assault with a one- and three-year firearm specification. The remaining charges were nolled.

{¶5} The trial court merged the firearm specifications and sentenced Solomon to three years in prison on the firearm specification, to be served prior to and consecutive to four years for the felonious assault charge, for a total of seven years. The trial court further advised Solomon that he would be subject to a mandatory three years of postrelease control upon his release from prison. It is from this judgment that Solomon appeals.[1]

## II. Voluntary, Knowing, and Intelligent Plea

{¶6} In his sole assignment of error, Solomon contends that his plea was not knowingly, voluntarily, and intelligently entered into — not because the trial court did not comply with Crim.R. 11 — but because the trial court did not inform him that by pleading guilty, he would not be able to appeal the trial court's denial of his motion to suppress.

{¶7} At the close of the suppression hearing in this case, after the trial court denied Solomon's motion, defense counsel stated, "[o]bviously in light of the court's ruling, and to preserve a record should a reviewing court look at this, I would voice an objection to the court's decision. But I would also ask you to allow us a few minutes to talk prior to deciding what course of action we're going to take here." The court took a

---

[1]The state argues that Solomon is appealing a motion to withdraw his plea. But Solomon's motion to withdraw his plea is not before us on appeal; Solomon filed that motion after this court granted him leave to file a delayed appeal.

recess at that point.

{¶8} When the court returned, the parties informed the court that they had reached a plea agreement. The state explained that in exchange for Solomon pleading guilty to felonious assault with the one- and three-year firearm specifications, it would ask the court to dismiss the remaining two charges. Defense counsel agreed with the state that those were the terms of the plea agreement.

{¶9} Solomon informed the court that he intended to plead guilty. He then told the court, in response to the court's questioning, that he had obtained his GED, could read and write, and was not under the influence of any drugs or alcohol that would affect his ability to understand the proceedings. Solomon further stated that he was a United States citizen and was not under probation for any other case.

{¶10} The court then informed Solomon of the constitutional rights he was waiving by pleading guilty and made sure that Solomon understood those rights and that he was waiving them. The trial court further explained to Solomon of the mandatory sentence and fines that he would face by pleading guilty to second-degree felonious assault and notified him that he would be subject to three years of mandatory postrelease control upon his release from prison. The trial court also notified Solomon of the consequences he would face if he violated the terms of his supervision. The trial court then asked Solomon if, knowing all of these things, he wished to plead guilty. Solomon replied that he did. The court asked Solomon, "how do you plead?" Solomon responded, "guilty." Solomon told the court that he was satisfied with his defense

counsel and that no one promised him anything in exchange for his guilty plea. The court found that Solomon was entering into the plea voluntarily, knowingly, and intelligently. It then accepted Solomon's guilty plea, and made a finding of guilt.

{¶11} Solomon now contends that his defense counsel's statement at the close of the suppression hearing, "[o]bviously in light of the court's ruling, and to preserve a record should a reviewing court look at this, I would voice an objection to the court's decision," establishes that he and his defense counsel believed he could appeal the trial court's denial of his motion. We disagree. After that statement, defense counsel immediately stated, "But I would also ask you to allow us a few minutes to talk prior to deciding what course of action we're going to take here." When the parties returned after the recess, the state, defense counsel, and Solomon told the court that Solomon was going to change his plea from not guilty to guilty. Neither defense counsel nor Solomon made any other statements on the record to indicate that Solomon wished to appeal the trial court's denial of his motion to suppress.

{¶12} Solomon argues that *State v. Engle*, 74 Ohio St.3d 525, 660 N.E.2d 450 (1996), supports his argument that the trial court's failure to apprise him of his appellate rights before accepting his plea renders the plea invalid. Solomon, however, mischaracterizes *Engle*. In *Engle*, the Ohio Supreme Court found that the defendant was misled into believing that she could appeal an adverse ruling on a motion in limine upon entering a no contest plea based on the prosecution's comments prior to accepting the defendant's plea. The Supreme Court stated: "[i]n the instant case, the prosecutor, in

explaining the plea bargain to the court, made no fewer than six references to an appeal by the defendant in a colloquy that covers only seven sentences in the trial transcript." *Id.* at 527. The Supreme Court further explained:

> Based on the prosecutor's statements to the court, it is beyond doubt that defense counsel had explained to his client the strategy of pleading to reduced charges and appealing the trial court's adverse rulings, rather than proceeding with a defense that had been stripped of its key elements. The trial court listened without uttering a word of correction.

*Id.*

**{¶13}** The Supreme Court found that these specific references to the right to appeal that went uncorrected by the court did indeed preserve the error for appeal where ordinarily none would exist. *Id.* at 527-528.

**{¶14}** *Engle* is simply not applicable here. After the trial court denied Solomon's motion to suppress, his defense counsel indicated that he objected to the court's decision, but then stated he wished to discuss with his client what they were going to do. When the parties came back from a recess, they informed the court that Solomon intended to withdraw his plea of not guilty and plead guilty to felonious assault with the firearm specifications. The state requested that the court dismiss the remaining charges. Notably, at the plea hearing, neither Solomon nor his counsel stated anything on the record that indicated Solomon was pleading guilty with the belief that he could appeal the trial court's denial of his motion to suppress.

**{¶15}** Solomon cites no other authority, nor could we independently locate any such authority, that requires a trial court to apprise a criminal defendant that by pleading

guilty, he or she could not appeal the trial court's ruling denying a motion to suppress.

{¶16} Accordingly, Solomon's sole assignment of error is overruled.

{¶17} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR